GEUDER, PAESCHKE & FREY CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 7644, 8187, 21213.   Promulgated May 9, 1928.

*Walter W. Hammond, Esq.,* for the petitioner.
*L. C. Mitchell, Esq.,* for the respondent.

1250

## OPINION.

MURDOCK: In the computation of invested capital for any given year the total income and profits taxes of the preceding year should be prorated from the dates the installment payments were due. See section 1207 of the Revenue Act of 1926, and *Russel Wheel & Foundry Co.*, 3 B. T. A. 1168. The respondent admitted that for 1919 he prorated the wrong amount representing 1918 taxes. This error and that relating to inventories for 1919 will be corrected on final settlement of the deficiency.

The Commissioner determined that the petitioner had not charged off, in former years, sufficient depreciation on its depreciable assets to represent the actual depreciation sustained. He then applied certain " straight-line " rates of depreciation as proper for the various assets and reduced invested capital as set out in our findings of fact. The petitioner complains of this action, claims that it was the application of a theory to upset a practical method based on facts as applied by the petitioner in keeping its books, and asks this

Board for relief. We have been given a most incomplete picture of the way it has accounted for depreciation of its assets. It did not offer its books in evidence, but conceded that it had used varying rates, and in some years had charged off no depreciation at all.

The circumstances as disclosed by the record in this case tend to vindicate the action of the Commissioner. Theoretical though it was, it seems superior to the taxpayer's method. Here is a taxpayer trying at one and the same time to justify charging off depreciation at high rates in the taxable years and at low rates in eighteen prior years, the average rates for the eighteen-year period in some instances being less than one-fourth of the rate for the taxable years. One of the principal witnesses admitted that the average of the rates used for machinery over the eighteen-year period was $2\frac{1}{3}$ per cent, 5 per cent was a normal rate, and during the taxable years 10 per cent had been charged off due to increased hours of operation and the forced employment of unskilled workmen.

The petitioner attempted to justify its failure to charge off depreciation in prior years. That it made repairs and tried to keep the equipment in good working condition is no justification. A proper rate of depreciation is based on probable useful life, taking into consideration the fact of proper repairs. Witnesses said that partial replacements and renewals were charged to expense, but from the evidence we can not determine that capital expenditures of any consequence were ever charged to expense. In regard to buildings there is evidence that no capital expenditures were ever charged to expense. One witness for the petitioner stated that no depreciation was taken on the buildings for several years because he thought the buildings were worth more than had been paid for them, another stated that the books did not show sufficient depreciation for buildings and motor vehicles, and another witness was called by the petitioner for the express purpose of showing that the method used in charging depreciation off the books was improper.

Perhaps the petitioner's chief reliance for the proof of its contention was placed upon the opinion evidence of four witnesses. In the examination of these witnesses counsel for the petitioner showed, as of the beginning of one or more of the taxable years, the percentage which the amount of depreciation charged off the books for some or all of the assets was of the amount of the book capital account for the same asset or assets, and had the witnesses express opinions that in view of the efficient operation of the corporation the amount of depreciation charged off was ample and represented the depreciation actually sustained and then that the Commissioner's charge off being a larger percentage of the capital account was so excessive as to be incompatible with efficient operation.

We attach little or no weight to the opinions of these witnesses. After each had expressed his opinion that the petitioner's charge off for depreciation was ample, the petitioner called another witness to show by supposedly expert mathematical computation that the book method of charging off depreciation was improper and did not show when assets were fully depreciated. If the capital asset account, as carried on the books, was reduced at times from cost by depreciation, the total accrued depreciation might actually exceed the amount of the capital account at times, and witnesses stating that efficient operation could not be maintained when the depreciation amounted to 50 or even 100 per cent of the capital account would be stating a paradox. The books are not before us and we do not know how they were kept. But from a portion of a brief offered in evidence, which brief was filed by the petitioner with the respondent as bearing on its tax liability for the years now before us, it appears that the books provided for depreciation upon the basis of written down values of the assets until the year 1915, and subseqently upon gross costs by means of depreciation reserves. Also the petitioner's allegations that the Commissioner's reduction of the depreciation claimed for the taxable years resulted from his increase of depreciation for former years would indicate that the assets were not carried upon the books at gross cost, and that a reserve for depreciation was not the method used in keeping the books. Two witnesses who gave opinions did not know how the books were kept, and, so far as we know, knew nothing of bookkeeping methods. One seemed to think that the operating efficiency of the plant was shown by the percentage which accumulated depreciation was of the capital asset account. The other witnesses did not seem to have any very clear thoughts on this supposed relationship, although some conceded that a machine in the last year of its useful life might be as efficient as ever it was.

Even if it be conceded that the asset accounts were carried at cost, there was no showing that the four witnesses sufficiently understood the subject of the possible relation of operating efficiency to depreciation to entitle their opinions to any weight. Their testimony rather indicated that they did not understand the subject. One witness whose deposition was introduced in evidence had not seen the assets or the operating plant until 1926, and we are not impressed by the opinions which he gave over objections which we think were well taken.

So far as the question of invested capital is concerned we will not disturb the Commissioner's determination. *Mandel Brothers*, 4 B. T. A. 341.

The petitioner's contention as to a proper deduction in the taxable years for wear, tear and exhaustion of its assets falls with its con-

tention relating to invested capital, there being no evidence of the cost or March 1, 1913, value of the depreciable assets on hand during the taxable years to enable us to determine that the basis used by the Commissioner was wrong. The parties were in agreement as to the rates to be applied and only differed as to the basis.

The petitioner called a witness who said that prior to December, 1918, he had been an internal revenue agent and since then a tax consultant. He gave his opinion as to the correct amount of the allowable deduction for exhaustion, wear and tear of the petitioner's assets for each of the taxable years. He also made a computation in which he arrived at a cost basis for depreciation different from that shown by the books and from that used by the Commissioner. His computation, while possibly correct from a mathematical standpoint, is no solution for the problem presented in this case, since it assumes that the books showed the actual depreciation sustained and depends upon the judgment of the witness on which we have no reason to rely.

The parties entered into a stipulation as to special assessment for the year 1918, which, in view of our decision, we need not discuss.

*Judgment will be entered under Rule 50.*